[No. 21840. *En Banc.* April 23, 1930.]

DEAN ESTES, *Appellant,* v. BREWSTER CIGAR COMPANY, INCORPORATED, *et al., Respondents.*[1]

[1]Reported in 287 Pac. 36.

*Stephen V. Carey* and *Samuel B. Bassett,* for appellant.

*Hammond & Frye,* for respondents.

FULLERTON, J.—The appellant, Estes, instituted the present action against the respondents Brewster Cigar Co., Inc., and M. G. Daymude, and the defendant Clarence E. Failing, to recover for personal injuries. To the second amended complaint of the appellant, the respondents interposed a demurrer, based upon three of the statutory grounds, namely: (1) That there is a defect of parties defendant; (2) that several causes of action have been improperly united; and (3) that the complaint does not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, whereupon the appellant elected to stand on his amended complaint and refused to plead further. Following the election of the appellant, the trial court entered a judgment dismissing the action with prejudice as against the respondents.

Paragraphs I and II of the amended complaint on which the appellant elected to stand read as follows:

"I. That at all times hereinafter mentioned, the defendant Brewster Cigar Co., Inc., was and now is a corporation organized and existing under and by virtue of the laws of the state of Washington, and operating a chain of cigar stores in the city of Seattle including one situated at the premises known as 400 Union street.

"II. On the 6th day of June, 1928, and for a long time prior thereto, the defendant corporation, in connection with the business of selling cigars, cigarettes and tobacco in its said store at 400 Union street, Seattle, Washington, openly, notoriously and unlawfully

conducted, managed and operated for profit a certain gambling game, to wit, a dice game whereby cigarettes, cigars, tobacco and other merchandise of value were bet, wagered and hazarded upon chance. At the time herein mentioned and for a long time prior thereto, the said store of the defendant corporation and its said business, and particularly said gambling game so conducted by the defendant corporation for profit, was in the sole charge of the defendant M. G. Daymude, as the agent, representative and employee of the said defendant corporation; that on the said 6th day of June, 1928, at or about 4:00 p. m., the plaintiff entered said store and was induced to engage in said dice game for cigarettes by said M. G. Daymude, so acting as the representative and agent of the defendant corporation. As the result of said game, the plaintiff lost, and started to peaceably leave said premises, whereupon the defendant M. G. Daymude, to enforce the payment of the amount of the lost wager, rushed after and pursued the plaintiff, crying out, 'Thief—robber,' and by such outcries and by running after and pointing to plaintiff, wrongfully indicated that the plaintiff was a thief and a robber, or had committed some other felony in said store and thereby by said outcries and actions induced the defendant Clarence E. Failing, a policeman of the city of Seattle, to pursue the plaintiff under the belief that the plaintiff had in fact committed a felony; that said policeman, being so induced and incited thereto by the defendant corporation and its said representative, M. G. Daymude, pursued, shot and wounded the plaintiff and inflicted the injuries and damages hereinafter stated.''

The remaining paragraphs of the complaint set forth the injuries sustained by the appellant from the wounds inflicted upon him by the defendant Failing, and require no further notice.

Whether the complaint is vulnerable to attack on any of the grounds set forth in the demurrer is, of course, the ultimate question presented by the appeal. That it is not so vulnerable on the ground that there is

a defect of parties defendant, would hardly seem to require argument to demonstrate. The term "defect of parties defendant" means that there are too few parties defendant, not that there are too many; it means that a complete determination of the matters in controversy in the action cannot be had without the presence of other parties than those made parties to the action. To reach the question of too many parties, or the question of misjoinder of parties, a resort must be had to other forms of procedure. In the present instance, from the appellant's point of view, there are neither too few nor too many defendants. His contention is that, under the facts as he has stated them, all of the defendants jointly and each of them severally are liable to him for the injuries he suffered. He may have mistaken the legal principles involved, but he has the legal right to make the contention, and the consequent right to sue all of them in one action.

The second ground of demurrer is also without foundation. The appellant sets out in his complaint but one cause of action, namely, a cause of action for an injury to his person. It is true that the facts stated in the complaint show that the parties defendant are liable, if liable at all, upon different and separate principles of law. The charge is that the defendant Failing is liable because he wrongfully committed the immediate overt act which caused the injury; that the defendant Daymude is liable because he put in motion the chain of circumstances which induced Failing to commit the overt act; and that the defendant Brewster Cigar Co., Inc., is liable because Daymude was its employee and committed the acts charged against him while such employee, and while acting within the scope of his employment and in pursuit of his employer's business. But these differences in the nature of the liability of the several defendants

do not make the appellant's complaint duplicitous. The appellant is not obligated to pursue the defendants separately. He may join them in one action and recover against as many of them as the facts of his case will warrant.

The third ground of the demurrer raises the question of the sufficiency of the facts to constitute a cause of action. It is at once apparent, of course, that the respondent Brewster Cigar Co., Inc., is not liable for the injury inflicted upon the appellant unless the respondent Daymude is liable, and it is equally apparent that it may not be liable even though Daymude be so liable. Obviously, therefore, the first inquiry is as to the liability of Daymude.

That the acts of Daymude were wrongful, in a legal sense, hardly admits of doubt. The appellant had committed no wrong against the property of the store of which Daymude had charge; nor had he, by wagering and losing at the gambling game conducted in the store, incurred a liability which could be enforced against him. He thus had the right to depart peaceably from the store as he attempted to and did depart, and for Daymude to pursue him, point towards him, and utter cries which indicated that he had committed a felony while in the store, was a wrong which finds no justification in the conduct of the appellant.

But the acts of Daymude of themselves did not cause, and would not have caused, the injuries for which the appellant complains in his complaint. These were caused by the subsequent intervening acts of the police officer, and the further question is whether Daymude can be held for the consequences of these subsequent acts. The rule is general, of course, that no person, committing a wrongful or negligent act which is followed by an injury to another, is liable for that injury, unless his act is the proximate cause of the in-

jury. But proximate cause does not always mean the cause which is nearest in time or place to the injury, nor does it mean that there must not be an intervening act of a third person which directly causes the injury. As was said by the supreme judicial court of Massachusetts, in *Lane v. Atlantic Works*, 111 Mass. 136:.

"The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise."

The same doctrine is expressed in the often cited case of *A. T. & Santa Fe R. Co. v. Stanford*, 12 Kan. 354, 15 Am. Rep. 362, wherein it is said:

"Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action."

On the question, our own case of *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9, although not directly in point, has some bearing. In that case two motor vehicles were approaching each other on a street in the city of Seattle. As they reached an intersecting

street, the driver of the one turned his vehicle so as to cross the path of the other. To avoid a collision the other turned his vehicle to the left into the intersecting street, and in so doing struck and injured a pedestrian upon the intersecting street. In the arguments it was contended that the driver who turned to avoid the collision was guilty of an independent act of negligence breaking the chain of causation, isolating the negligence of the other driver, and making it a mere condition. But we refused to so hold, saying:

"There may be more than one proximate cause for the same injury. The negligence of different persons, though otherwise independent, may concur in producing the same injury. In such a case, all are liable. They may be held either jointly or severally."

See, also, *Eskildsen v. Seattle,* 29 Wash. 583, 70 Pac. 64; and *Sally v. Whitney Co.,* 89 Wash. 674, 154 Pac. 1089, L. R. A. 1916D 764.

Whether the acts of Daymude were such as to cause a reasonably prudent police officer to believe and act on the belief that the appellant had committed a felony, we think, is a question for the trier of the fact. Anyone of ordinary prudence, who observes the manager of a place of business where merchandise is kept for sale follow a person from the place of business and point towards him and at the same time hears him utter cries of "thief—robber," would obviously and naturally conclude that the person had committed a theft in the store and was escaping with the things stolen.

To a public police officer, the conclusion would be more obvious and natural than it would to the ordinary layman. It is the duty of the officer to keep the peace, to prevent thefts of property and to pursue and arrest anyone who he has reasonable cause to believe has committed a theft and is carrying away the fruits

of the theft; and he, because of his training and experience, would be more observant and quicker to sense the situation than would be the ordinary person. Indeed, as the matter appeared to the officer in this instance, it can be questioned whether he would not have been derelict in his duty had he not attempted to arrest the appellant. We cannot but conclude therefore that the intervening act of the police officer was one which would ordinarily be expected to flow from the act of the manager; at least, the acts are not so far disconnected as to enable a court to say as matter of law that the one act was not the immediate and direct cause of the other.

It may not be necessary to add that it is not a wrong for the manager of a store to pursue a person who has committed a theft in his store and recapture the things stolen. A person whose goods have been stolen may retake them peaceably wherever he may find them. In retaking them from a thief whom he pursues immediately after the theft, he may call persons to his aid and use such force as may be reasonably necessary to accomplish his purpose without liability except for excess of force. But when he pursues an innocent person under the belief that he has committed a wrong to his property, no matter how strong may be his belief, he is liable for any injury caused the person, whether committed by himself or by the persons he calls to his aid.

█ Passing to the question of the liability of the respondent Brewster Cigar Co., Inc., for the injuries to the appellant, it will be noted that it is not alleged in the complaint that the respondent participated in any way in the acts which led up to the appellant's injuries, or that it authorized the commission of the acts, or that it ratified them after they were committed. The allegation thought to charge the respond-

ent is the allegation that the wrongful acts were committed by its servant. If therefore the respondent is to be held liable for the acts, it must be so held under the doctrine of *respondeat superior*—the doctrine that holds a master responsible for the acts of his servant when the servant acts in the furtherance of his master's business, and within the scope of the servant's employment.

As we have before noted, the appellant did not wrongfully carry away or wrongfully attempt to carry away any property of the master, nor had he committed any other offense against the master's property, and no business of the master could be furthered by his arrest. Nor could his arrest be said to be in vindication of public justice; he had committed no offense, and had he been arrested, he must have been discharged as soon as the actual facts were made known. The act of the servant must thus have been in the furtherance of some purpose of his own, rather than the furtherance of some purpose of the master, and the rule is general that, when a servant acts for purposes of his own, not for the purposes of his master, and thereby causes an injury to another, the act is not within the scope of his employment and the master cannot be held liable therefor.

There is a line of cases, to which we have lent sanction in *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328, 51 L. R. A. (N. S.) 920, to the effect that a master is liable for the unauthorized wrongful acts of his servant, if he continues the servant in his employment after he has knowledge that the servant has committed or is liable to commit wrongful acts while in the performance of the duties for which he is employed. But this consideration is not present here. There is no allegation in the complaint in this in-

stance that the master had knowledge of any such tendency on the part of the servant.

Counsel for the respective parties have called our attention to many cases from other jurisdictions which are thought to support their respective contentions, but none has been cited which presents even a closely similar state of facts. A review of them would not therefore aid us. Nor do our own cases bear much more directly upon the question. Those possibly more nearly in point are the following: *Cunningham v. Seattle Electric R. Co.*, 3 Wash. 471, 28 Pac. 745; *Matsuda v. Hammond, supra; McQueen v. People's Store Co.*, 97 Wash. 387, 166 Pac. 626; *Frisell v. Surry*, 107 Wash. 662, 182 Pac. 604; and *Markwood v. McBroom*, 110 Wash. 208, 188 Pac. 521. These, however, rather refute than support the liability of the respondent, and our conclusion is that the complaint fails to state a cause of action against it.

The judgment is reversed and remanded for further proceedings as to the respondent Daymude, and affirmed as to the respondent Brewster Cigar Co., Inc.

MITCHELL, C. J., MAIN, FRENCH, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—The result reached in the prevailing opinion is correct in all but the conclusion that a cause of action is not alleged as against the cigar company.

The amended complaint avers that the cigar company owned and operated, among others, the cigar store at 400 Union street; that it there operated an unlawful gambling game; that the store and the gambling game, were, and long had been, in the "sole charge of Daymude, as the agent, representative and employee of the cigar company."

Daymude, of course, was the original actor who started the train of events. The policeman and his gun

are to be considered as his instrumentalities. His "hue and cry" were unfounded and unlawful. But the charge of the complaint, admitted by demurrer, making him the sole operator, agent, representative and employee, in sole charge of that particular business and gambling game of his principal, make the cigar company liable for his negligence and torts.

The rule is general that, for the acts of the servant within the general scope of his employment, while engaged in his master's business and done with a view to the furtherance of that business and the master's interest, the master will be responsible whether the act be done negligently, wantonly or even willfully, upon the principle of *respondeat superior*. *Dupre v. Childs,* 52 App. Div. 306, 65 N. Y. Supp. 179 (affirmed by court of appeals, 169 N. Y. 585), 62 N. E. 1095; *Collins v. Butler,* 83 App. Div. 12, 81 N. Y. Supp. 1074; *McCrory Stores Corporation v. Satchell,* 148 Md. 279, 129 Atl. 348; *Ayres & Co. v. Harmon,* 56 Ind. App. 436, 104 N. E. 315; *Dixon v. Haynes,* 146 Wash. 163, 262 Pac. 119; *Netherlands American Mtg. Co. v. Eastern R. & L. Co.,* 148 Wash. 249, 268 Pac. 604.

The law relating to liability of principal for acts of agent in wrongfully causing arrest and detention of another in the assumed furtherance of the principal's business, is entirely analogous. For the general rules controlling such liability, see 25 C. J. 502.

It is there stated, as an exception to the rule:

"The principal is exonerated in many instances, where the agent is not such a one as is intrusted with the care and custody of the principal's business and property, . . ."

which is not the alleged case here.

For these reasons, I dissent as to that part of the decision in favor of the cigar company.

TOLMAN and PARKER, JJ., concur with HOLCOMB, J.

BEALS, J. (dissenting)—I concur in the opinion of the majority in so far as it affirms the judgment of the trial court dismissing the action as to respondent Brewster Cigar Co., Inc., while, in so far as the decision reverses the judgment as to respondent Daymude, I dissent therefrom.

It is probable that a complaint, based upon the occurrences set forth in the complaint herein, could be so drawn as to be good against a demurrer on the part of respondent Daymude, but, in my opinion, the complaint in this action, as drawn, does not state facts sufficient to constitute a cause of action against him. The complaint alleges that respondent Daymude induced respondent Failing, a police officer of the city of Seattle, to pursue appellant under the belief that appellant had committed a felony, and that officer Failing "pursued, shot and wounded" appellant, inflicting upon him the injuries complained of.

A police officer is an agent of the state, whose duty it is in proper cases to make arrests. Respondent Daymude had no right to arrest appellant, although it may be conceded that, under certain circumstances, he might have detained him pending arrest by competent authority. Officer Failing, however, had the right to make an arrest. Under the circumstances disclosed by the complaint, appellant would have been justified in resisting Daymude had the latter attempted to detain him. Appellant was not, however, justified in resisting officer Failing or in fleeing from him if summoned by the officer to halt. Whether guilty of any offense or not, it was appellant's duty, when summoned by an officer of the law, to obey the summons and submit to proper questioning or examination.

A complaint may be sworn to by an individual maliciously, wantonly and with no probable cause whatsoever, but if, pursuant to such a complaint, an officer

of the law receives a warrant of arrest, regular on its face, and acting thereunder seeks to apprehend the person named therein, that person, however innocent of any wrongdoing, is not justified in resisting the officer, knowing him to be such; and the person who wrongfully swore to the complaint is not, in my opinion, liable to the person arrested for damages suffered by such person in resisting the officer who is in a lawful manner attempting to execute the warrant.

Likewise, a private citizen, putting in operation a train of events which leads an officer of the law to seek to arrest an individual, is liable only for damages occasioned by the lawful acts of the officer and is not liable for wanton actions on his part, actions in excess of his lawful authority, or damages occasioned by the use of unnecessary force or violence.

If, therefore, appellant, knowing that a police officer was seeking to detain, question or arrest him, attempted to flee from the officer and failed to halt upon command, appellant has no action for damages based upon injuries which he suffered because of his willful and deliberate attempt to escape. Likewise, if appellant resisted the officer and was shot in the course of such resistance, he has no just complaint, as he had no right to resist an officer who was attempting to detain or arrest him, even though he might have had a right to resist any attempted detention by respondent Daymude.

It is equally true that, if respondent Failing wantonly, and using unnecessary force and violence, injured appellant, respondent Daymude would not be responsible for damages so inflicted.

The complaint before us seems to be based upon the theory that, the hue and cry raised by Daymude having been unjustified and wrongful, it necessarily follows that Daymude is liable to appellant for any in-

478

juries received by him as the result thereof. Such may or may not be the case, depending upon the facts, and notwithstanding the rule that a pleading should be liberally construed as against a general demurrer, in my opinion, the complaint, alleging no more than it does concerning the wounding of appellant by officer Failing, fails to state a cause of action against either of the respondents.

In my opinion the judgment appealed from should be in all things affirmed.

